**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

THERESA L. TRAUTWEIN, an individual,    *
1840 Gillis Falls Road
Woodbine, MD 21797
               Plaintiff,    *

                                    Case No. 1:24-cv-03650-ABA

v.    *

CHASE BREXTON HEALTH SERVICES, INC.,
1111 N. Charles Street    *
BALTIMORE, MD 21201,

             Defendant.    *    **JURY TRIAL DEMAND**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, THERESA L. TRAUTWEIN, by and through undersigned counsel, Paul R. Rivera, Attorney at Law LLC, and pursuant to the leave granted by the Court by Order entered March 3, 2036, hereby files this First Amended Complaint against Defendant, stating as follows:

**NATURE OF THE ACTION**

1. This is an action for religious discrimination, hostile work environment, retaliation, and failure to accommodate religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. Title VII prohibits discrimination because of religion, requires reasonable accommodation of sincerely held religious beliefs absent undue hardship, and prohibits retaliation for protected activity.

1

2. Plaintiff requested a religious accommodation for sincerely held religious beliefs and practices. After Defendant received that request, Defendant denied or failed to provide a reasonable accommodation and, further, created, ratified, condoned, and/or tolerated a hostile work environment toward Plaintiff because of Plaintiff's religion and because Plaintiff requested a religious accommodation.

3. Plaintiff also brings a retaliation claim because requesting a religious accommodation is protected activity, and Title VII forbids materially adverse treatment that would dissuade a reasonable worker from making such a request.

## PARTIES

4. Plaintiff, THERESA L. TRAUTWEIN, is an individual who, during all relevant times, resided in Woodbine, Maryland. She is and was protected by Title VII of the Civil Rights Act of 1964 and the non-discrimination provisions contained in the Annotated Code of Maryland. She is a member of a protected class on account of her religion, Roman Catholicism (Christianity).

5. Defendant CHASE BREXTON HEALTH SERVICES, INC. ("CBHS" or "Chase Brexton") is a Maryland corporation duly registered to conduct business in the State of Maryland, whose principal address is in Baltimore, Maryland. CBHS is an employer as defined by Title VII in that it employs more than fifteen (15) employees and at all times pertinent to this Complaint was Plaintiff's employer.

## JURISDICTION AND VENUE

6. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, and the non-discrimination provisions contained in the Annotated Code of Maryland. Plaintiff seeks damages for unlawful discrimination arising from adverse

employment action taken against her by CBHS (and its employees and agents acting within the scope of their employment) due to her religion – Roman Catholic Christianity.

7. Jurisdiction of this Court is based on a claim of deprivation of Federal Civil Rights and invoked pursuant to the following statues: a. 28 U.S.C. § 1331, giving district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States; and, b. 28 U.S.C. § 1343, giving district courts original jurisdiction over actions to secure civil rights extended by the United States governments.

8. In accordance with 28 U.S.C. §1367, supplemental jurisdiction is proper with respect to Plaintiff's state law claims because these claims arise from the same case and controversy as Plaintiff's Title VII claims.

9. Plaintiff timely filed a timely inquiry and complaint (both on June 21, 2024) with the Equal Employment Opportunity Commission ("EEOC"), charge number 531-2023-00200, alleging discrimination by CBHS against her based on religion.

10. On September 18, 2024, Plaintiff received a Notice of Right to Sue from the EEOC. Plaintiff has therefore exhausted her administrative remedies, and this Complaint is timely filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.  Exhibit A.

11. Plaintiff has timely filed this action and complied with all administrative and procedural requirements necessary to file this lawsuit.

12. Venue is proper in the District of Maryland because of the events or omissions giving rise to the claims alleged herein occurred in this District, pursuant to 28 U.S.C. §1391.

13. CBHS is a Maryland entity and subject to personal jurisdiction in the District of Maryland because it has sufficient contacts with the forum to subject it to personal jurisdiction in this District.

## PLAINTIFF'S RELIGIOUS BELIEFS

14. Plaintiff is a devout Christian and member of the Roman Catholic religion.

15. Plaintiff is a faithful and involved member of the church, attending regularly with her family.

16. Plaintiff's faith informs how she lives out all aspects of her life, including how she acts and does her work for Defendant within the scope of her employment.

17. Plaintiff and her church believe that the Holy Bible is the inspired Word of God, and they also hold to several confessions that they believe faithfully summarize Biblical teachings.

18. Plaintiff believes, consistent with the teachings of the Bible and her church, that all humans are created in God's image and thus deserving of love and respect.

19. Plaintiff's belief in the sanctity of human life are based in large part upon what is written in the Holy Bible, such as in the following biblical passages:

    a. "So God created man in his own image, in the image of God created he him; male and female created he them." (Genesis 1:27, KJV);

    b. "For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made. Wonderful are your works; my soul knows it very well. My frame was not hidden from you, when I was being made in secret, intricately woven in the depths of the earth. Your eyes saw my unformed substance; in your book were written, every one of them, the days that were formed for me, when as yet there was none of them." (Psalm 139:13-16, ESV)

    c. "Then the word of the Lord came to me, saying, Before I formed thee in the womb I knew you. And before you were born I consecrated you; I appointed you a prophet to the nations." (Jeremiah 1:4-5, ESV)

    d. "Thou shalt not kill." (Exodus 20:13, KJV)

4

e. "Thou shalt not take the name of the LORD thy God in vain; for the LORD will not hold him guiltless that taketh his name in vain." (Exodus 20:7, KJV)

20. Plaintiff's sincerely-held religious beliefs and conviction inform her that human life is sacred and to be protected from the moment of conception up through and including natural death.

21. Accordingly, Plaintiff cannot participate in any medical procedure that involves the termination of the life of an unborn child (i.e., abortion) without violating her sincerely-held religious beliefs and convictions, including providing information and/or referrals to clinic patients for abortion providers and services. This is a conscientious objection that is protected by both state and federal law.

22. These and other beliefs - shared by Plaintiff and her church - are consistent with traditional biblically-based beliefs, traditions, and observances that billions of Christians have held for over two millennia.

### PLAINTIFF'S EMPLOYMENT WITH CBHS

23. Plaintiff began working for CBHS on or about December 18, 2018.

24. Throughout the course of her employment with CBHS, Plaintiff endeavored to hold herself to a high work ethic.

25. Throughout the course of her employment with CBHS, Plaintiff was repeatedly promoted to higher positions with greater responsibility and pay.

26. Plaintiff was able to serve many pregnant patients of CBHS throughout several years without violating her sincerely-held religious beliefs by simply asking colleagues to step in for her for a task that violates her conscience – i.e., providing information and/or referrals for abortion providers and services to abortion-minded clinic patients.

27. The foregoing practice accommodated Plaintiff's religious beliefs.

28. On August 28, 2023, Plaintiff communicated her written conscientious objection and request to be exempted from CBHS's "Pregnancy Test Workflow" which included the requirement to "Provide patient with additional information about pregnancy termination services." This was a request for a religious accommodation.

29. Following Plaintiff's message, CBHS denied this request for a religious accommodation in writing within twenty-two (22) minutes of receipt.

30. The following day, August 29, 2023, Plaintiff was questioned regarding her religious beliefs and professional commitment to her employment duties by CHBC personnel in a meeting.

31. During that meeting, CHBC personnel pressured Plaintiff to immediately ("by the close of business" the same day) affirm her commitment to execute a workflow task that violated her sincerely-held religious belief and conscientious objection.

32. Plaintiff's request for more time to reply to this ultimatum was denied.

33. In addition to the foregoing ultimatum, CBHS personnel added that unless Plaintiff capitulated, that she would need to give a two-week notice of her resignation or else be subject to disciplinary measures.

34. At the conclusion of that meeting, Plaintiff was directed to take unsolicited time off that deviated from her established work schedule for the remainder of the day.

35. On the following day, August 30, 2023, CBHS personnel reaffirmed in writing the denial of my Plaintiff's request for a religious accommodation, and further wrote that Plaintiff's failure to timely respond to the "close of business" ultimatum constituted Plaintiff's "agreement" to follow the workflow that violated her sincerely-held religious belief.

36. This was despite the fact that Mrs. Trautwein was off duty on unsolicited time off for the remainder of August 29th, and thereafter on previously scheduled personal time off until September 5, 2023.

37. The foregoing interactions between CBHS personnel and Plaintiff were degrading, and resulted in significant physical and emotional distress, including but not limited to nausea, inability to concentrate, depression, and anxiety.

38. The foregoing actions taken by CBHS against Plaintiff were neither unintentional nor accidental, rather they were deliberately taken against her with knowledge of her religious beliefs and directly on account of those beliefs.

39. CBHS made no effort whatever to accommodate Plaintiff's sincerely-held religious belief, in addition to pressuring her to immediately choose between keeping her job or violating her religious conscience.

40. Such actions by an employer against an employee were a violation of Plaintiff's civil rights, under both state and federal law.

41. By denying Plaintiff's religious accommodation, CBHS imposed adverse employment actions including but not limited to: pressure to compromise religious beliefs; prevention from completion of employment duties; compulsory and involuntary time off from established work schedule; threatening disciplinary action;

42. Plaintiff was intimidated, bullied, harassed, and ultimately suffered adverse employment actions for refusing to violate her sincerely held religious beliefs.

43. There were multiple reasonable accommodations that might have made to Plaintiff under the circumstances, including the most obvious reasonable accommodation – to simply continue

the pre-existing practice of allowing Plaintiff to refrain from providing referral information to CBHS patients, and for another CBHS employee to provide such information.

44. On September 5, 2023, legal counsel for Plaintiff emailed correspondence to Defendant (hereafter "Plaintiff's Legal Correspondence") charging that Defendant had committed illegal discrimination under state and federal law against Plaintiff by denying her religious accommodation, further indicating that a complaint would be filed against CBHS with the EEOC, and demanding that CBHS immediately cease and desist its illegal discriminatory policies and practices against Plaintiff, that CBHS refrain from any form or manner of retaliation or recrimination against Plaintiff for raising her  complaint, and a demand CBHS preserve all evidence and documentation within its possession, custody, and/or control that related Plaintiff's employment and specifically to the circumstances surrounding her complaint for violation of her rights as an employee.

45. Beginning immediately after receipt of Plaintiff's Legal Correspondence, CBHS did not further openly or directly require and/or backed away from, its prior demand that Plaintiff affirm her commitment to execute the referenced workflow task that violated her sincerely-held religious belief and conscientious objection.

46. Beginning immediately after receipt of Plaintiff's Legal Correspondence, CBHS did not further openly or directly require and/or backed away from, its prior demand that unless Plaintiff affirmed her commitment to execute the referenced workflow task that violated her sincerely-held religious belief and conscientious objection, that she would need to give a two-week notice of her resignation or else be subject to disciplinary measures.

47. Notwithstanding CBHS' change in position towards Plaintiff's request for religious accommodation after receipt of Plaintiff's Legal Correspondence, CBHS nevertheless

thereafter continued to practice, cultivate and tolerate a pattern of religious discrimination, hostile work environment, and/or retaliation towards Plaintiff included, but was not limited to, the following forms: exclusion of Plaintiff from relevant work discussions, verbal harassment towards Plaintiff, tolerance of language offensive to Plaintiff, tolerance of personal criticism of Plaintiff, increased workload, excessive monitoring of Plaintiff's work, increased criticism of Plaintiff's work, increased scrutiny of Plaintiff's work, micromanagement of Plaintiff's work, increased frequency of negative feedback to Plaintiff's work, differential treatment of Plaintiff compared with fellow employees, and tolerating derogatory comments of fellow employees towards Plaintiff.

48. An example of the foregoing discriminatory conduct practiced, cultivated and/or tolerated by Defendant was exclusion of Plaintiff from relevant work discussions and verbal harassment towards Plaintiff committed by fellow employees ("FE") who are referenced in this First Amended Complaint as FE1 and FE2.

49. FE1 and FE2 excluded Plaintiff from relevant work discussions, and despite repeated requests to respect Plaintiff's religious beliefs not to misuse God's name, purposefully increased their use of such language in Plaintiff's presence to provoke a reaction.

50. A second example of the foregoing discriminatory conduct practiced, cultivated and/or tolerated by Defendant was the tolerance of personal criticism of Plaintiff, and tolerating derogatory comments towards Plaintiff by FE3 and FE4.

51. FE3 and FE4 openly characterized Plaintiff's religion and/or religiously-based objections CBHS's "Pregnancy Test Workflow" as judgmental and offensive, and on another occasion subjected Plaintiff to derogatory comments based on assumed or perceived political opinions.

52. A third example of the foregoing discriminatory conduct practiced, cultivated and/or tolerated by Defendant was - despite the tolerance of personal criticism and derogatory comments towards Plaintiff - subsequently being reported to Defendant's HR Department on multiple occasions, whereupon Plaintiff was accused of being offensive toward other employees and was informed that she needed to find a new job.

53. A fourth example of the foregoing discriminatory conduct practiced, cultivated and/or tolerated by Defendant was the excessive monitoring and increased criticism by Defendant's nursing staff of Plaintiff's work, including but not limited to her routine work movements, lunch breaks, and communications with her supervisor.

54. A fifth example of the foregoing discriminatory conduct practiced, cultivated and/or tolerated by Defendant was the increased workload to Plaintiff and the differential treatment of Plaintiff compared with fellow employees in that they decreased the amount of work they completed on a daily basis resulting in an increased workload to Plaintiff, and that Defendant failed to hold fellow employees accountable for violations of safety concerns and professional conduct.

55. A sixth example of the foregoing discriminatory conduct practiced, cultivated and/or tolerated by Defendant was the micromanagement of Plaintiff's work which took the form of increased rounds of monitoring being made by the team leader in Plaintiff's immediate work group, increased monitoring by Defendant's associate staff, questioning of Plaintiff's schedule and lunch breaks, and updates provided by Plaintiff to the lead RN.

56. A seventh example of the foregoing discriminatory conduct practiced, cultivated and/or tolerated by Defendant was the tolerance of language offensive to Plaintiff and her religious beliefs not to misuse God's name, despite repeated requests not to do so in the form of a

marked increase in multiple staff members intentionally misusing God's name in a manner calculated to aggrieve Plaintiff, including while walking by Plaintiff's desk.

57. Defendant's adverse employment actions against Plaintiff had a damaging effect on her emotionally, physically, and financially.

58. The sincerity of Plaintiff's religious beliefs is demonstrated by her willingness to suffer adverse employment actions from her employer for a job, one which she enjoyed and needed to help support her family, in order to follow what she sincerely believes to be God's mandates and direction.

59. Defendant had in place policies and procedures that specifically prohibited and required Defendant's managers, officers, and agents to prevent discrimination, retaliation, and harassment against and upon its employees.

60. Defendant's manager, officer, and/or agent was aware of Defendant's policies and procedures requiring Defendant's managers, officers, and agents to prevent, and investigate discrimination, retaliation, and harassment/hostile work environment against and upon its employees.

61. Furthermore, Defendant's manager, officer, and/or agent maintained broad discretionary powers regarding staffing, managing, hiring, firing, contracting, supervising, assessing and establishing of corporate policy and practice in Defendant's facilities.

62. However, Defendant's manager, officer, and/or agent chose to consciously and willfully ignore said policies and procedures and therefore, their outrageous conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the rights of Plaintiff and the rights and duties owed by Defendant to Plaintiff.

63. Defendant and its managers, officers, and/or agents aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above.

64. Defendant denied Plaintiff's requested accommodation on or about [date], failed to provide a reasonable accommodation, and/or failed to engage in a good-faith effort to resolve the accommodation request.

65. After Plaintiff requested a religious accommodation, Defendant, through supervisors, managers, and/or coworkers whose conduct Defendant authorized, ratified, condoned, or failed to stop, subjected Plaintiff to unwelcome hostility as described herein.

66. The foregoing conduct was unwelcome.

67. The conduct was directed at Plaintiff because of Plaintiff's religion and/or because Plaintiff requested a religious accommodation.

68. The conduct occurred repeatedly over time, including from approximately 2023 through 2025 and was not limited to a stray or isolated comment.

69. The conduct was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

70. Plaintiff reported the harassment and retaliatory treatment to HR on multiple occasions.

71. Defendant knew or should have known of the harassment and failed to take prompt and effective remedial action, thereby making the conduct imputable to Defendant.

72. Plaintiff's request for a religious accommodation constituted protected activity under Title VII.

73. After Defendant learned of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse treatment, including the conduct as described herein.

74. There is a causal connection between Plaintiff's protected activity and Defendant's adverse treatment, as shown by temporal proximity, changed treatment, statements by decisionmakers, and/or a pattern of retaliatory conduct.

75. Defendant's retaliatory conduct would have dissuaded a reasonable employee from requesting a religious accommodation or complaining of religious discrimination.

76. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including emotional distress, humiliation, inconvenience, loss of professional standing, and other compensatory damages, as well as lost wages, lost benefits, and other economic losses.

<u>COUNT I - RELIGIOUS DISCRIMINATION-</u>

<u>FAILURE TO ACCOMMODATE  - TITLE VII</u>

77. Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

78. Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et. seq states: (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, any agent of such a person…; (f) The term "employee" means an individual employed by an employer… (j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

79. U.S.C. Section 2000e-2 entitled **UNLAWFUL EMPLOYMENT PRACTICES** provides, in relevant part, as follows: (a) Employer practices **It shall be an unlawful employment practice for an employer** – (1) to fail or refuse to hire or to **discharge any individual**, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…**religion.** (m) **Impermissible consideration** of race, color, **religion**, sex, or national origin in employment Practices.

80. A religious discrimination claim under Title VII requires that (1) the Plaintiff has a bona fide religious belief that conflicts with an employment requirement; (2) the Plaintiff informed the employer of this belief; and (3) the Plaintiff was disciplined or threatened with discipline for failure to comply with the conflicting employment requirement.

81. Plaintiff has a bona find religious belief, she informed the employer of her belief, and she was threatened with discipline for her failure to comply with work policy that violated her religious beliefs.

82. Defendant, upon information and belief, has employed more than fifteen (15) employees for all relevant periods and is a covered employer subject to Title VII.

83. Plaintiff, was a covered employee of the Defendant for all relevant periods herewith.

84. Plaintiff promptly asked for an accommodation and made it known that her religious beliefs would not permit her to comply with work policy requiring her to refer clinic patients for abortions.

85. Rather than offering a reasonable accommodation, meaningful due process, or other respectful consideration of Plaintiff's religious beliefs whatsoever, Defendant immediately denied the

accommodation and threatened to take, and did in fact take, adverse employment action against Plaintiff.

86. Plaintiff had the right under Title VII to have her sincerely held religious beliefs accommodated absent a showing of a substantial burden to the employer.

87. The Defendant did not, and on information and belief cannot, show that accommodating the Plaintiff was so much of a burden or hardship as to make it unreasonable or impossible under the applicable legal standard.

88. The actions of the Defendant constitute unlawful employment practices which are in violation of Title VII.

89. Under Title VII, it is unlawful for an employer to discharge a person or "to discriminate against any person with respect to his compensation, terms, conditions, or privileges of employment" because of a person's "religion." 42 U.S.C. § 2000e-2. A person's religion "includes all aspects of religious observance and practice, as well as belief." Id at § 2000e.

90. Plaintiff was a member of a protected class based on her religion as broadly defined to include both religious beliefs and practices. She is a Roman Catholic Christian.

91. Defendant subjected Plaintiff to an adverse employment action in that she was made to choose between her faith and maintaining her position with CBHS.

92. Defendant's adverse employment actions towards Plaintiff were substantially motivated by her religion.

93. Defendant's discriminatory actions violated Plaintiff's rights not to suffer discrimination on account of her religion pursuant to 42 U.S.C § 2000e-2.

94. Title VII of the Civil Rights Act prohibits employers from discriminating against employees due to their religion.

95. The actions complained of herein constitute religious discrimination.

96. When faced with requests for religious accommodation, employers are obligated to provide reasonable accommodation to an employee's religious observance or practice. 42 U.S.C. 2000e(j). Protected religious belief or observance includes "all aspects of religious observance and practice, as well as belief." *Id.*

97. By failing and refusing to provide Plaintiff a religious accommodation, Defendant discriminated against her, taking multiple forms of adverse employment actions against her.

98. As a direct and proximate result, Plaintiff suffered harm in the form of past and future lost wages and benefits and other pecuniary loss.

99. As a further direct and proximate result of Defendant's discriminatory action against Plaintiff, as alleged above, Plaintiff has been harmed in that she suffered humiliation, mental anguish, and emotional physical distress, and has been injured in mind and body, in an amount according to proof.

100.     Plaintiff also seeks reasonable attorneys' fees, pursuant to 42 U.S.C. § 2000e-5(k).

101.     As a direct result of the actions of the Defendant's unlawful employment practices in violation of Title VII, the Plaintiff has suffered and will continue to suffer harm, including, the violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, and special damages.

102.     Plaintiff is entitled to the maximum damages allowable under Title VII as a matter of law, including, but not limited to: actual, consequential and incidental financial losses; lost wages, backpay, front pay, benefits, and other compensation plus interest; compensatory damages; punitive damages; nominal damages; restoration of vacation days, comp hours and

any lost time hours; reasonable attorneys' fees and costs of suit.

103.    Defendant's conduct was despicable and the acts herein alleged were malicious, fraudulent and oppressive, and were committed with an improper and evil motive to injure Plaintiff, amounting to malice and in conscious disregard of plaintiff's rights. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## COUNT II

## RELIGIOUS HOSTILE WORK ENVIRONMENT

## (Title VII, 42 U.S.C. §§ 2000e et seq.)

104.    Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

105.    Plaintiff was subjected to unwelcome conduct in the workplace.

106.    The conduct was because of Plaintiff's religion and/or because Plaintiff sought to practice religion through a requested accommodation.

107.    The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

108.    Defendant knew or should have known of the harassment and failed to take prompt and effective remedial action, and/or Defendant's supervisors or agents directly participated in the harassment.

109.    By reason of the foregoing, Defendant violated Title VII by subjecting Plaintiff to a religious hostile work environment.

## COUNT III

## RETALIATION

## (Title VII, 42 U.S.C. §§ 2000e et seq.)

110.    Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

111.    Plaintiff engaged in protected activity by requesting a religious accommodation and/or opposing religious discrimination and harassment.

112.    Defendant knew of Plaintiff's protected activity.

113.    After learning of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse treatment, including retaliatory hostility and other acts that would dissuade a reasonable employee from requesting religious accommodation or complaining of religious discrimination.

114.    Defendant's materially adverse treatment was caused by Plaintiff's protected activity.

115.    By reason of the foregoing, Defendant violated Title VII's anti-retaliation provision.

## COUNT IV- RELIGIOUS DISCRIMINATION - FAILURE TO ACCOMMODATE - Ann. Code Md., State Government §20-601 et seq.

116.    Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

117.    *It is unlawful for an employer to discharge a person, "or to discriminate against the person in compensation or in terms, conditions, or privileges of employment" because of a person's "religious creed. A person's religious creed includes "all aspects of religious belief, observance, and practice."* Ann. Code Md., State Government §20-601 *et seq*.

118.     Plaintiff was a member of a protected class based on her religion as broadly defined to include both religious beliefs and practices. She is a Roman Catholic Christian.

119.     Defendant's discriminatory actions are in violation of Plaintiff's rights pursuant to Ann. Code Md., State Government §20-601 *et seq*., not to suffer discrimination on account of her religion.

120.     At all times herein mentioned, Ann. Code Md., State Government §20-601 *et seq.* was in full force and effect and was binding on Defendant.

121.     When faced with requests for religious accommodation, employers are obligated to explore any available reasonable alternative means of accommodating the religious belief or observance.

122.     Protected religious belief or observance includes "all aspects of religious belief, observance, and practice."

123.     Despite Plaintiff notifying Defendant of her need for religious accommodation, Defendant utterly failed to comply with legal obligations both to explore available reasonable alternative accommodations, and to implement a religious accommodation.

124.     By failing and refusing to provide Plaintiff a religious accommodation, Defendant discriminated against her by imposing adverse employment action.

125.     As a proximate result of the aforesaid acts of Defendant, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities with Defendant, and damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages pursuant to applicable law providing for prejudgment interest.

126.    As a proximate result of the wrongful acts of Defendant, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms. Plaintiff is informed and believes, and thereupon alleges, that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

127.    As a proximate result of the wrongful acts of Defendant, Plaintiff has been forced to hire an attorney to prosecute her claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under applicable law.

128.    Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct.

## Count V - RELIGIOUS HOSTILE WORK ENVIRONMENT

## Ann. Code Md., State Government §20-601 *et seq.*

129.    Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

130.    Plaintiff was subjected to unwelcome conduct in the workplace.

131.    The conduct was because of Plaintiff's religion and/or because Plaintiff sought to practice religion through a requested accommodation.

132.    The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

133.    Defendant knew or should have known of the harassment and failed to take prompt and effective remedial action, and/or Defendant's supervisors or agents directly participated in the harassment.

134.    By reason of the foregoing, Defendant violated Ann. Code Md., State Government §20-601 *et seq*. by subjecting Plaintiff to a religious hostile work environment.

## Count VI – RETALIATION

### Ann. Code Md., State Government §20-601 *et seq*.

135.    Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

136.    Plaintiff engaged in protected activity by requesting a religious accommodation and/or opposing religious discrimination and harassment.

137.    Defendant knew of Plaintiff's protected activity.

138.    After learning of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse treatment, including retaliatory hostility and other acts that would dissuade a reasonable employee from requesting religious accommodation or complaining of religious discrimination.

139.    Defendant's materially adverse treatment was caused by Plaintiff's protected activity.

50. By reason of the foregoing, Defendant violated the anti-retaliation provisions of Ann. Code Md., State Government §20-601 *et seq*.

## COUNT VII – VIOLATION OF THE BALTIMORE COUNTY CODE, CHAPTER 29 RELIGIOUS DISCRIMINATION-FAILURE TO ACCOMMODATE –

21

140.    Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

141.    The Baltimore County Code, Chapter 29, states in pertinent part as follows:

§ 29-1-101. -  (d) *Discrimination.* "Discrimination" means acting or failing to act or unduly delaying an action regarding a person because of the person's race, ***creed, religion***, color, sex, age, national origin, marital status, sexual orientation, gender identity or expression, status as a veteran, or physical or mental disability, in a way that the person is adversely affected in the areas of:(1) Housing; ***(2) Employment***; (3) Education; (4) Public accommodation; or (5)Financing. (emphasis added)…..

§ 29-2-202. - PROHIBITIONS. a) *Employer.* An employer may not engage in discrimination in: (1) Discharging a person; (2) Refusing to hire a person; (3) ***Acting against a person with respect to compensation or other terms and conditions of employment;*** or (4) The ***manner in which the employer limits, segregates, classifies, or assigns an employee.*** (emphasis added).

142.    By failing and refusing to provide Plaintiff a religious accommodation, Defendant discriminated against her by imposing adverse employment action in violation of the Baltimore County Code, Chapter 29.

143.    As a proximate result of the aforesaid acts of Defendant, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and

22

benefits, and the intangible loss of employment related opportunities with Defendant, and damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages pursuant to applicable law providing for prejudgment interest.

144.     As a proximate result of the wrongful acts of Defendant, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms. Plaintiff is informed and believes, and thereupon alleges, that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

145.     As a proximate result of the wrongful acts of Defendant, Plaintiff has been forced to hire an attorney to prosecute her claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under applicable law.

146.     Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct.

**Count VIII - – VIOLATION OF THE BALTIMORE COUNTY CODE, CHAPTER 29 RELIGIOUS DISCRIMINATION-  RELIGIOUS HOSTILE WORK ENVIRONMENT**

147.     Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

148.     Plaintiff was subjected to unwelcome conduct in the workplace.

149. The conduct was because of Plaintiff's religion and/or because Plaintiff sought to practice religion through a requested accommodation.

150. The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

151. Defendant knew or should have known of the harassment and failed to take prompt and effective remedial action, and/or Defendant's supervisors or agents directly participated in the harassment.

152. By reason of the foregoing, Defendant violated Baltimore County Code, Chapter 29, by subjecting Plaintiff to a religious hostile work environment.

## Count IX - – VIOLATION OF THE BALTIMORE COUNTY CODE, CHAPTER 29 RELIGIOUS DISCRIMINATION- RETALIATION

153. Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

154. Plaintiff engaged in protected activity by requesting a religious accommodation and/or opposing religious discrimination and harassment.

155. Defendant knew of Plaintiff's protected activity.

156. After learning of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse treatment, including retaliatory hostility and other acts that would dissuade a reasonable employee from requesting religious accommodation or complaining of religious discrimination.

157. Defendant's materially adverse treatment was caused by Plaintiff's protected activity.

158.     By reason of the foregoing, Defendant violated the anti-retaliation provisions of Defendant violated Baltimore County Code, Chapter 29.

## COUNT X – VIOLATION OF "MARYLAND CONSCIENCE STATUTE"

### (Ann. Code of Maryland, Health-General Article, § 20-214)

159.     Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

160.     Ann. Code of Maryland, Health-General Article, § 20-214 states as follows: "Refusal of person or hospital to perform or participate in procedures. (a)(1) A person may not be required to perform or participate in, or refer to any source for, any medical procedure that results in artificial insemination, sterilization, or termination of pregnancy. (2) The refusal of a person to perform or participate in, or refer to a source for, these medical procedures may not be a basis for: (i) Civil liability to another person; or (ii) Disciplinary or other recriminatory action against the person."

161.     Plaintiff refers to the foregoing provision of state law as "Maryland's Conscience Statute."

162.     By failing and refusing to provide Plaintiff a religious accommodation, Defendant discriminated against her by imposing adverse employment action in violation of the Maryland Conscience Statute.

163.     As a proximate result of the aforesaid acts of Defendant, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities with Defendant, and damage to her professional reputation, all in an amount subject to proof at the time of trial.

Plaintiff claims such amounts as damages pursuant to applicable law providing for prejudgment interest.

164.    As a proximate result of the wrongful acts of Defendant, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms. Plaintiff is informed and believes, and thereupon alleges, that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

165.    As a proximate result of the wrongful acts of Defendant, Plaintiff has been forced to hire an attorney to prosecute her claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under applicable law.

166.    Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct.

167.

**WHEREFORE**, Plaintiff prays judgment against Defendant as follows:

a)  Order Defendant to take such affirmative action as is necessary to purge Plaintiff's personnel file of any reference to the punishment they imposed on her, and to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect employment opportunities with Defendant or other potential employers;

b) Award compensatory economic damages for Plaintiff's actual, consequential and incidental financial losses, including, but not limited to lost backpay, front pay, benefits, and other compensation plus interest;

c) Restore any vacation days, comp hours, and lost time hours used by the Plaintiff;

d) Compensatory non-economic damages, including, but not limited to, pain, suffering and emotional distress, in an amount according to proof at trial;

e) A declaration that Defendant violated Title VII;

f) A declaration that Defendant violated Ann. Code Md., State Government §20-601 *et seq*.

g) A declaration that Defendant violated Baltimore County Code, Chapter 29.

h) A declaration that Defendant violated **(Ann. Code of Maryland, Health-General Article, § 20-214)**

i) Punitive damages to the extent permitted by law;

j)  Pre-judgment and post-judgment interest;

k) Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and

l) Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury.

Respectfully submitted,

*/s/ Paul R. Rivera, Esq.*

_____

Paul R. Rivera, Esq.
Paul R. Rivera, Attorney at Law LLC
P.O. Box 394
Rockville, MD 20848
(301) 949-6367
*law.rivera@gmail.com*

27

Federal Bar ID# 15364
Attorney for Plaintiff

March 25, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2026, I caused a true and correct copy of the foregoing First Amended Complaint to be filed with this Court's Electronic Case Filing System, with notice of electronic filing to be automatically provided to the following persons:

Karla Grossenbacher, Esq.
Seyfarth Shaw LLP
975 F Street, N.W.
Washington, DC 20004-1454
kgrossenbacher@seyfarth.com
Counsel For Defendant

/s/ Paul R. Rivera, Esq.
Paul R. Rivera, Esq.